**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| DEFENDERS OF WILDLIFE, ) <br> 1130 17th Street, NW ) <br> Washington, DC 20036, ) <br>   ) <br> THE HUMANE SOCIETY OF THE ) <br> UNITED STATES, ) <br> 2100 L Street, NW ) <br> Washington, DC 20037, ) <br>   ) <br> Plaintiffs, ) <br>   ) <br> v. ) <br>   ) <br> NATIONAL MARINE FISHERIES ) <br> SERVICE, ) <br> 1315 East-West Highway ) <br> Silver Spring, MD 20910, ) <br>   ) <br> ERIC SCHWAAB, ) <br> NOAA Assistant Administrator ) <br>   for Fisheries ) <br> National Marine Fisheries Service ) <br> 1315 East-West Highway ) <br> Silver Spring, MD 20910, ) <br>   ) <br> GARY LOCKE, ) <br> Secretary of Commerce ) <br> U.S. Department of Commerce ) <br> 14th Street & Constitution Ave., NW ) <br> Washington, DC 20230, ) <br>   ) <br> Defendants. ) <br>   ) | Civ. No. <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

  1.   Each year, critically endangered North Atlantic right whales, humpback whales, and fin whales become entangled in commercial fishing gear. In these incidents, fishing line wraps around whales' heads, flippers, or tails, often impeding basic movement, feeding, and

1

reproduction, causing infection, and sometimes preventing the animals from resurfacing, resulting in drowning.

2.     The North Atlantic right whale population numbers only about 345 individuals, and the species is so imperiled that scientists predict that the death of a single, reproductively viable female is likely to jeopardize the continued existence of the species.  Yet almost every year since 2002, at least one entangled right whale has been found dead or so gravely injured that death is deemed likely.  Entanglements also continue to threaten the recovery of endangered humpback and fin whales; just since the beginning of 2010, three humpback whales have been found dead or seriously injured subsequent to entanglement.

3.     This case challenges the National Marine Fisheries Service's (NMFS) failure to properly consider the impact of four Northeast fisheries – the American lobster fishery, the Northeast multispecies fishery, the monkfish fishery, and the spiny dogfish fishery – on the three endangered whale species, as required by the Endangered Species Act (ESA).  16 U.S.C. §§ 1531–1544.

4.     Specifically, the ESA requires NMFS to formally consult with its own scientists to insure that the continued operation of these federally-authorized fisheries is not likely to jeopardize the continued existence of endangered whales.  16 U.S.C. § 1536(a)(2).  In 2001, NMFS was unable to make this finding, and the fisheries were allowed to proceed only after adopting additional conservation measures.  While NMFS has required still more conservation measures since 2001, including substantially changing fishing gear requirements in 2007, entanglements have continued.  The agency has initiated, but failed to complete, required consultation to determine whether its conservation measures are adequate.  The jeopardy analysis and determination required by the ESA has not been made in nearly *nine years*.

5. Further, the ESA prohibits NMFS from "irreversibl[y] or irretrievabl[y]" committing resources while ESA consultation is ongoing. 16 U.S.C. § 1536(d). By continuing to authorize federal fisheries during consultation, NMFS is threatening the very existence of the North Atlantic right whale, and violating section 7(d) of the ESA.

6. Finally, the ESA prohibits NMFS from authorizing actions that result in the "take" of endangered species. *Id*. § 1538. Take is defined broadly to include actions that harass, harm, wound, or kill listed species. *Id*. § 1532(19). Because the agency continues to authorize federally-permitted fishing that will imminently cause the take of endangered whales, NMFS is in violation of section 9 of the ESA.

7. Plaintiffs seek an order of this Court compelling NMFS to complete ESA consultation on the effects of the lobster, Northeast multispecies, monkfish, and spiny dogfish fisheries on endangered North Atlantic right whales, humpback whales, and fin whales, in order to insure the fisheries are not likely to jeopardize the species' continued existence or result in the unlawful take of these endangered whales, as required by the ESA.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which grants the district courts original jurisdiction over "all civil actions arising under the . . . laws . . . of the United States."

9. Plaintiffs provided a 60-day notice of intent to file this suit pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g)(2)(C), by letter to the Secretary of Commerce and NMFS. Plaintiffs sent the notice by certified mail and email on March 26, 2010.

10. Venue in this Court is proper under 28 U.S.C. § 1391(e).

3

**PARTIES**

11.     Plaintiff Defenders of Wildlife (Defenders) is a national non-profit organization dedicated to the protection and restoration of all native wild animals and plants in their natural communities.  Based in Washington, D.C., and with offices spanning from Florida to Alaska, Defenders has nearly one million members and supporters across the nation, including 158,927 members in states along the Atlantic Coast of the United States where right whales, humpback whales, and fin whales live, feed, breed, and migrate.  Defenders is a leader in the conservation community's efforts to protect and recover these endangered whale species.

12.     Defenders brings this action on behalf of its members, many of whom enjoy observing, photographing, and appreciating Atlantic large whales in the wild, and studying the species in their natural habitats.  Defenders' members regularly engage in these activities in various locations along the Atlantic Coast, particularly along the Northeast Coast, and will continue to do so in the future.

13.     Plaintiff The Humane Society of the United States (The HSUS) is a non-profit organization headquartered in Washington, DC.  The HSUS is the nation's largest animal protection organization, with over 11 million members and constituents, including over 300,000 members and constituents who reside in the Commonwealth of Massachusetts.  The HSUS is committed to the goals of protecting, conserving, and enhancing the nation's wildlife and wildlands, and fostering the humane treatment of all animals.  In furtherance of these goals and objectives, The HSUS and its members have demonstrated a strong interest in the conservation and humane treatment of marine mammals, including the North Atlantic right whale, humpback whale, and fin whale.  For example, The HSUS has served as a member of the Atlantic Large

Whale Take Reduction Team since its inception in 1996, actively participating in efforts to protect these large whales from entanglement in fishing gear.

14. The HSUS brings this action on behalf of itself and its members, who regularly engage in educational, recreational, and scientific activities involving right whales, humpback whales, and fin whales. Many HSUS members live in close proximity to and frequently visit various portions of the Northeast Atlantic coast and regularly view or attempt to view these whales. HSUS members regularly whale watch both from the shore and from boats, including commercial whale watching vessels. HSUS members plan to continue to observe these whale species in the future.

15. Defenders' and HSUS's members' interests in observing, studying, and appreciating these species are harmed by Defendants' failure to comply with the ESA. NMFS has acknowledged that reducing the number of right whale, humpback whale, and fin whale entanglements is essential to each species' survival and recovery. Defendants' violations are threatening the already-fragile existence of the endangered North Atlantic right whale, humpback whale, and fin whale by undermining and denying much-needed protections for the whales and by authorizing actions that result in take of the species. These violations and their contribution to the continued stalled recovery of right, humpback, and fin whales harm and will continue to harm Plaintiffs' and their members' interests in the conservation of these species.

16. Plaintiffs' and their members' injuries will be redressed by an order of this Court compelling NMFS to complete ESA consultation on the effects of the lobster, Northeast multispecies, monkfish, and spiny dogfish fisheries on endangered North Atlantic right whales, humpback whales, and fin whales, in order to insure that the fisheries are not likely to jeopardize the species' continued existence.

17. Defendant National Marine Fisheries Service (NMFS) is the agency within the U.S. Department of Commerce's National Oceanic and Atmospheric Administration to which the Secretary of Commerce has delegated the authority to conserve and manage most endangered and threatened marine species pursuant to the ESA and the Marine Mammal Protection Act (MMPA). NMFS is also the agency to which the Secretary of Commerce has delegated the authority to manage federal fisheries pursuant to the Magnuson-Stevens Fishery Conservation and Management Act (MSA).

18. Defendant Eric Schwaab is the Assistant Administrator for Fisheries at NMFS, and has responsibility for implementing and fulfilling the agency's duties under the ESA, the MMPA, and the MSA. Mr. Schwaab is sued in his official capacity.

19. Defendant Gary Locke is the Secretary of Commerce and has ultimate responsibility for the programs of NMFS. Secretary Locke is sued in his official capacity.

20. Collectively, Defendants named in paragraphs 17 through 19 shall be referred to as "Defendants" or "NMFS" in this complaint.

## STATUTORY BACKGROUND

### A. The Endangered Species Act

21. In enacting the ESA, Congress recognized that certain species "have been so depleted in numbers that they are in danger of or threatened with extinction" and further made it "the policy of Congress that all Federal . . . agencies shall seek to conserve endangered species and threatened species and shall utilize their authorities in furtherance of the purposes" of the Act. 16 U.S.C. § 1531(a)(2), (c)(1). The ESA defines "conservation" to mean "the use of all methods and procedures which are necessary to bring any endangered species or threatened

species to the point at which the measures provided pursuant to this [Act] are no longer necessary." *Id.* § 1532(3).

22.	To implement the ESA's mandate, section 7(a)(2) of the ESA requires each federal agency, in consultation with NMFS, to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat . . . which is determined . . . to be critical." *Id.* § 1536(a)(2).

23.	If an agency's actions are likely to adversely affect a listed species, formal consultation is required. 50 C.F.R. § 402.14(a). Consultation "shall be concluded within the 90-day period beginning on the date on which initiated," unless extended by agreement between NMFS and the action agency. 16 U.S.C. § 1536(b)(1)(A).

24.	After consultation, NMFS produces a biological opinion explaining how the proposed action will affect the listed species and determines "whether the action . . . is likely to jeopardize the [species'] continued existence." 50 C.F.R. § 402.14(g)(3), (4). If jeopardy is found, the biological opinion must outline "reasonable and prudent alternatives" (RPAs) to the proposed action that NMFS has determined "would avoid the likelihood of jeopard[y]." *Id.* §§ 402.14(h)(3); 402.02.

25.	During this process, and to facilitate implementation of section 7(a)'s substantive mandate to insure against jeopardy, section 7(d) provides that an agency "shall not make any irreversible or irretrievable commitment of resources" toward a project that would "foreclos[e] the formulation or implementation of any reasonable and prudent alternative measures" that would avoid the likelihood of jeopardy to the species. 16 U.S.C. § 1536(d). The 7(d) prohibition

7

"is in force during the consultation process and continues until the requirements of section 7(a)(2) are satisfied." 50 C.F.R. § 402.09.

26.     Further, ESA regulations require an agency to reinitiate consultation if: (a) the amount of take specified in the incidental take statement is exceeded, (b) new information reveals that the action may have effects not previously considered, or (c) the action is modified in a way that was not previously considered. *Id.* § 402.16.

27.     Finally, section 9 of the ESA prohibits the "take" of any endangered species. 16 U.S.C. § 1538(a)(1)(B). "'Take' means to harass, harm, . . . wound, kill, trap, [or] capture" an animal. *Id.* § 1532(19). The ESA also prohibits a governmental agency from "caus[ing]" any activity resulting in take. *See id.* § 1538(g).

### B. The Administrative Procedure Act

28.     The Administrative Procedure Act (APA) provides general rules governing federal agency decision-making. 5 U.S.C. §§ 551–706.

29.     The APA authorizes a court to "(1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(1), (2)(A).

### C. The Marine Mammal Protection Act

30.     Congress passed the Marine Mammal Protection Act (MMPA) in 1972 to insure that marine mammals are "protected and encouraged to develop to the greatest extent feasible." 16 U.S.C. §§ 1361–1423h. The MMPA specifically requires NMFS to "prevent the depletion" of marine mammals from incidental take by commercial fisheries. *Id.* § 1387(f)(1).

31.     NMFS must develop a Take Reduction Plan (TRP) for each "strategic stock" of marine mammals, including any ESA-listed species. *Id.* §§ 1387(f)(2); 1362(19). The TRP is developed to reduce, within six months of implementation, serious injury and mortality of a strategic stock to levels below the potential biological removal level, and in the long-term, to insignificant levels approaching a zero mortality and serious injury rate. *Id.* § 1387(f)(2).

32.     Any fishery that "frequent[ly]" or "occasional[ly]" causes mortality or serious injury to marine mammals must register with NMFS and comply with any applicable TRP. *Id.* § 1387(c)(1)(A)(i)-(ii), (2)(A), (3).

### D. The Magnuson-Stevens Fishery Conservation and Management Act

33.     Pursuant to the Magnuson-Stevens Fishery Conservation and Management Act (MSA), regional fishery management councils propose fishery management plans (FMPs) to regulate fish catch in U.S. federal waters (3 to 200 nautical miles offshore). 16 U.S.C. §§ 1801–1891d. The FMPs must meet "national standards" that include prevention of overfishing and minimization of bycatch. *Id.* § 1851(a)(1), (9). Once completed, NMFS is responsible for reviewing FMPs, approving or rejecting them as consistent with applicable law, and, if the FMP is approved, issuing regulations to implement the plan. *Id.* § 1854.

34.     NMFS's MSA regulations implementing the Northeast multispecies, monkfish, and spiny dogfish FMPs require fishing vessels to obtain a new federal permit each year in order to operate in federal waters. 50 C.F.R. § 648.4(a).

### E. The Atlantic Coastal Fisheries Cooperative Management Act

35.     In addition to regulation pursuant to the MSA, the American lobster fishery is also regulated pursuant to the Atlantic Coastal Fisheries Cooperative Management Act (ACFCMA), which coordinates coastal fisheries management in state waters. 16 U.S.C. §§ 5101–5108.

Under the ACFCMA, the Atlantic States Marine Fisheries Commission adopts a Coastal FMP, or Interstate Fishery Management Plan (IFMP), that applies in the various states' waters. *Id.* § 5104(a)(1). NMFS may then adopt regulations applicable in federal waters that are compatible with both the IFMP and the MSA's national standards. *Id.* § 5103(b)(1).

36. NMFS has adopted ACFCMA regulations for the lobster fishery requiring that all fishing vessels obtain an annual federal permit to operate in federal waters. 50 C.F.R. § 697.4(a), (g).

## FACTUAL BACKGROUND

### A. Endangered Atlantic Large Whales

37. Three endangered Atlantic large whale species frequently suffer injury or death as a result of entanglement in commercial fishing gear.

38. The North Atlantic right whale (*Eubalaena glacialis*) is a critically endangered species, with a population of only approximately 345 individuals. Although the right whale has been listed as endangered since 1970, the species has not recovered. NMFS has identified entanglement in commercial fishing gear and ship strikes as the two primary anthropogenic factors retarding the North Atlantic right whale's recovery. NMFS has concluded that the "loss of even a single individual may contribute to the extinction of the species" and "if current trends continue, the population could go extinct in less than 200 years." 69 Fed. Reg. 30,857, 30,858 (June 1, 2004).

39. Between 2001 and 2009, there were nine documented serious injuries or mortalities of right whales due to entanglement in fishing gear. Approximately 75 percent of right whales are scarred at least once by fishing gear, and *annually* between 14 and 51 percent of

right whales are "involved in entanglements." NMFS, *2009 Stock Assessment* at 16 (March 2009) (*Stock Assessment*).

40. Endangered humpback whales (*Megaptera novaeangliae*) are also frequently entangled in fishing gear. The Gulf of Maine population of humpback whales contains only 847 individual whales, and NMFS acknowledges that ship strikes and entanglements may be slowing humpback recovery. *2009 Stock Assessment* at 28. Each year, an average of 2.8 endangered Gulf of Maine humpback whales are killed or seriously injured due to entanglement. *Id.* at 29. In total, between approximately 48 to 65 percent of the Gulf of Maine humpback population has experienced entanglements. *Id.* at 30.

41. Entanglement also threatens endangered fin whales (*Balaenoptera physalus*). The North Atlantic fin whale population includes only approximately 2,269 whales. *2009 Stock Assessment* at 38. NMFS estimates that entanglement kills or seriously injures an average of 1.2 endangered fin whales each year. *Id.* at 39.

**B. Regulation of Fishery and Endangered Whale Interactions**

42. Both trap/pot and gillnet fishing gear cause whale entanglements, and both the vertical lines and groundlines associated with this fixed gear create entanglement risk. Researchers have estimated that 56 percent of whales for which entangling gear could be identified were entangled in vertical/buoy line, and 28 percent were entangled in groundline. *FEIS for Amending the Atlantic Large Whale Take Reduction Plan* at 2-41 (Aug. 2007).

43. In 1997, NMFS adopted the first Atlantic Large Whale Take Reduction Plan (TRP) to reduce commercial fishing impacts on whales, as required by the MMPA. Fisheries regulated under the Northeast multispecies, monkfish, and spiny dogfish FMPs, and the lobster Interstate FMP, cause frequent or occasional serious injury or death to right whales, humpback

whales, and fin whales, and therefore must comply with the Atlantic Large Whale TRP. 16 U.S.C. § 1387(c)(3)(A)(iv); 74 Fed. Reg. 58,859 (Nov 16, 2009).

44. Because NMFS authorizes the operation of these fisheries through implementation of the various FMPs and the MMPA, including granting annual permits to vessels operating in federal waters pursuant to the MSA and the ACFCMA, NMFS as the authorizing agency must consult with itself as the expert agency regarding the effects of the fisheries on listed species and insure that the fisheries are not likely to cause jeopardy under the ESA. 16 U.S.C. § 1536(a)(2).

45. After a series of entanglements in the late 1990s, NMFS reinitiated ESA consultation to consider how the lobster, Northeast multispecies, monkfish, and spiny dogfish fisheries affect endangered whales. The consultation resulted in four similar biological opinions, each concluding that existing conservation measures were inadequate to avoid the likelihood of jeopardy to right whales by the fisheries. NMFS, *Biological Opinion re: Reinitiation of Consultation on the Federal Lobster Management Plan* at 102 (June 14, 2001) (*2001 Lobster BiOp*); NMFS, *Biological Opinion re: Authorization of fisheries under the Northeast Multispecies Fishery Management Plan* at 107 (June 14, 2001); NMFS, *2001 Biological Opinion re: Authorization of fisheries under the Monkfish Fishery Management Plan* at 118 (June 14, 2001); NMFS, *2001 Biological Opinion re: Authorization of fisheries under the Spiny Dogfish Fishery Management Plan* at 102 (June 14, 2001).

46. In each biological opinion, NMFS adopted the same RPA, requiring fishing gear modification at the times and places whales are present, as well as monitoring. The monitoring requirements specified what events would cause the RPA to be deemed ineffective, thus

requiring reinitiation of consultation, in addition to the reinitiation criteria already established in the ESA regulations.

47. For example, in the 2001 Lobster BiOp, NMFS stated that the RPA would be deemed ineffective if "a right whale [is] killed or seriously injured in (1) gear that is marked as being used in the lobster fishery, (2) gear that is identifiable as being approved for use in a fishery authorized by the Lobster Management Plan, . . . (3) gear that cannot be identified as being associated with a specific fishery . . . [or (4)] [t]he estimated number of right whale entanglements in any gear or scarring . . . increases or remains the same [in any given year] as the lowest annual level of the three preceding years." *2001 Lobster BiOp* at 105, 102.

48. In 2002, eight more right whales were found entangled; three resulting in serious injury or mortality. 70 Fed. Reg. 35,894, 35,895 (June 21, 2005). NMFS determined that the fatally entangled whale, right whale #3107, was entangled in vertical line "consistent with gear approved for use in the lobster industry." *Id*. Based on the RPA monitoring criteria set out in the Lobster BiOp, NMFS determined that the 2001 RPA was "not effective at avoiding the likelihood of jeopardy" and reinitiated consultation on the lobster fishery. *Id.* at 35,896.

49. Further, two of the other right whales found entangled in 2002, right whale #1815 and right whale #3210, were deemed "seriously injured." NMFS was unable to determine which specific fishery the entangling gear was from, but the entanglements nonetheless triggered reinitiation of consultation for all four fisheries pursuant to the 2001 RPA monitoring criteria.

50. Due to continued entanglements and following litigation, NMFS amended the Atlantic Large Whale TRP in 2007. 72 Fed. Reg. 57,104 (Oct. 5, 2007). NMFS again indicated that it would reinitiate consultation regarding the operation of the fisheries, this time under the new TRP amendments. Although the amendments required important conservation measures,

including the use of sinking groundline in many areas, NMFS has acknowledged that further risk reduction measures are necessary.

51. Despite implementation of the new TRP, entanglements continue today. With the exception of 2005, NMFS has discovered at least one right whale suffering serious injury or death as a result of entanglement each year since 2002. Even since April of 2008, when the TRP amendments became fully implemented, one right whale was found dead as a result of entanglement, and four humpback whales were found seriously injured or dead from entanglement. In January 2009, another right whale was found entangled in buoy line.

52. Even though entanglements triggered reinitiation of consultation nearly *nine years ago*, and despite major changes to the fishery regulatory scheme under the amended TRP, NMFS has not yet completed consultation on the lobster, Northeast multispecies, monkfish, or spiny dogfish fisheries.

## FIRST CLAIM FOR RELIEF

## Violations of the ESA and APA

### (Failure to Insure No Jeopardy)

53. Plaintiffs re-allege and incorporate, as if fully set forth herein, each and every allegation in the preceding paragraphs of this complaint.

54. NMFS has violated and continues to violate the ESA by failing to insure that the lobster, Northeast multispecies, monkfish, and spiny dogfish fisheries it authorizes are "not likely to . . . jeopardize the continued existence of" the endangered North Atlantic right whale, humpback whale, and fin whale. 16 U.S.C. § 1536(a)(2).

55.     NMFS's failure to insure its actions are not likely to jeopardize endangered species is arbitrary and capricious, and not in accordance with law, in violation of the APA.  5 U.S.C. § 706(2).

## SECOND CLAIM FOR RELIEF

## Violations of the ESA and APA

### (Failure to Complete Consultation)

56.     Plaintiffs re-allege and incorporate, as if fully set forth herein, each and every allegation in the preceding paragraphs of this complaint.

57.     NMFS violated and continues to violate the ESA by failing to complete consultation on the effects of the federally-authorized lobster, Northeast multispecies, monkfish, and spiny dogfish fisheries on endangered North Atlantic right whales, humpback whales, and fin whales.  16 U.S.C. § 1536(b).

58.     NMFS's failure to perform this mandatory duty constitutes an agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA.  5 U.S.C. § 706(1).

## THIRD CLAIM FOR RELIEF

## Violations of the ESA and APA

### (Unlawfully Committing Irreversible or Irretrievable Resources)

59.     Plaintiffs re-allege and incorporate, as if fully set forth herein, each and every allegation in the preceding paragraphs of this complaint.

60.     NMFS violated and continues to violate the ESA by "irreversibl[y] or irretrievabl[y]" committing resources that "foreclos[e] the formulation or implementation of any reasonable and prudent alternative measures" by continuing to authorize the federal lobster,

Northeast multispecies, monkfish, and spiny dogfish fisheries while consultation is ongoing. 16 U.S.C. § 1536(d).

61.     NMFS's commitment of resources while consultation is ongoing is arbitrary and capricious, and not in accordance with law, in violation of the APA. 5 U.S.C. § 706(2).

## FOURTH CLAIM FOR RELIEF

## Violations of the ESA and APA

### (Unlawfully Authorizing Actions that Result in Take)

62.     Plaintiffs re-allege and incorporate, as if fully set forth herein, each and every allegation in the preceding paragraphs of this complaint.

63.     NMFS is unlawfully "caus[ing]" the take of endangered North Atlantic right whales, humpback whales, and fin whales through its authorization of the federal lobster, Northeast multispecies, monkfish, and spiny dogfish fisheries. 16 U.S.C. § 1538(g).

64.     NMFS's authorization of federal fisheries that take endangered whales is arbitrary and capricious, and not in accordance with law, in violation of the APA. 5 U.S.C. § 706(2).

## PRAYER FOR RELIEF

For the reasons stated above, Plaintiffs respectfully request that the Court grant the following relief:

1.     Declare that NMFS is in violation of its duty under the ESA to insure that its actions are not likely to jeopardize the continued existence of any ESA-listed species, 16 U.S.C. § 1536(a)(2), and therefore its continued authorization of the federal lobster, Northeast multispecies, monkfish, and spiny dogfish fisheries is arbitrary and capricious, and not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2);

2. Declare that NMFS is in violation of its duty under the ESA to complete consultation, 16 U.S.C. § 1536(b), and has unlawfully withheld or unreasonably delayed this nondiscretionary agency action, in violation of the APA, 5 U.S.C. § 706(1);

3. Declare that NMFS's "irreversible or irretrievable" commitment of resources in continuing to authorize the federal lobster, Northeast multispecies, monkfish, and spiny dogfish fisheries during consultation violates section 7(d) of the ESA, 16 U.S.C. § 1536(d), and is arbitrary, capricious, or otherwise not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2);

4. Declare that NMFS's continued authorization of the lobster, Northeast multispecies, monkfish, and spiny dogfish fisheries violates section 9 of the ESA by unlawfully "caus[ing]" the unauthorized take of endangered species, 16 U.S.C. § 1538(g), and is arbitrary, capricious, or otherwise not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2);

5. Compel NMFS to complete consultation regarding the impacts of the federal lobster, Northeast multispecies, monkfish, and spiny dogfish fisheries on North Atlantic right whales, humpback whales, and fin whales, including issuing final biological opinions as appropriate under the ESA by a date certain;

6. Issue an order awarding Plaintiffs their costs of litigation, including reasonable attorney fees as provided by the ESA, 16 U.S.C. § 1540(g)(4); and

7. Provide such other relief as the Court deems just and proper.

DATED:  May 27, 2010

>Respectfully Submitted,
>
> /s/ Kimberly D. Ockene
>Kimberly D. Ockene
>MA BBO #638097
>Senior Attorney, Cruelty, Companion Animals & Research
>The Humane Society of the United States
>131 Windermere Rd.
>Auburndale, MA  02466
>(617) 467-5842
>kockene@humanesociety.org
>
>*Counsel for Plaintiffs*